And turn to our next case, Usov v. Mark Lazar, Inc. Good morning, Your Honors. May it please the Court, my name is Marvin Nyman of Nyman and Myron's on behalf of the appellant, Mark Lazar, Inc. This appeal discusses two types of issues. One is the primary one, it's the jurisdiction. And then there's some other erroneous factual determinations that we would address. But focusing first on the jurisdiction issue, the appellee, or Usov, in lower court claimed that there was diversity of jurisdiction. Now, in the lower court, before I get to the actual evidence that was in the record, the lower court found in its decision that Elena, Mr. Usov's daughter, as Mr. Harris's widow, was an interested party. We're talking in terms of her credibility as a witness. He said, notwithstanding the fact that she's an interested party in the case, from a biased perspective, I still believe her. Yes. That's what that was about. He wasn't talking about her interested party from a perspective of jurisdiction. But he added something, and he said, as Harris's widow. But additionally, he also said later that Mr. Usov acted on her behalf. And these determinations were based upon evidence provided by Usov and Discovery, and by the testimony of Elena and Usov himself. But Usov was the titular owner of the property, and had been for a long time before this dispute arose. Well. Not as if this was something that was concocted to create jurisdiction. He was the titular owner, and he was entitled to bring a lawsuit, even though he held the diamonds for the benefit of his daughter. Actually, Your Honor, that was not an issue that was even argued. It wasn't disputed. My client, Mr. Lazarink. In 18391, the district court concluded that Usov was the sole owner of Pinnacle. Yes. Well, that. But the point was. Pinnacle was the agreement. That was long before any lawsuit. But the point was, the evidence admitted, Lazar had no knowledge of Usov's involvement in this case until August 2011, when Elena presented him with a document which transferred Mervia out of the case, and put it into Usov personally. So Lazarink had only dealt with Elena, after they dealt with Harris when he was alive, they dealt with Elena. Signature. She wasn't a signatory on the agreement. The agreement was between Pinnacle and your client. Correct. But Usov didn't sign that agreement. Pinnacle did. Yes. But it was signed by Harris, or I'm not looking at it now, either Harris or Dawes. Dawes was the agent, the registered agent. Now, Dawes, if I could jump ahead, he was supposed to be a testifier in this case, and at the last moment, he was supposed to be deposed, rather. At the last moment, they decided not to depose him, because he was overseas. We couldn't compel his attendance. And because he no longer was in the chain of title, because at this point, Usov owned the property. Now, Harris, there was documents from Harris, documents from Dawes, stating that the owner of this property was either directly Elena, and it's in the record, or she was the sole beneficiary of Harris's will, and he presented proof, which is in the record, to Lazar, Inc., saying that you have to deal, once Harris died, you have to deal with Elena. She's the owner, either both directly, through a lifetime transfer, and indirectly, through being the sole beneficiary of Harris's will. Now, this, the first time Usov ever actually appeared in dealings between Lazar, Inc., and this process was before the trial. Now, the first time his name appeared was a year before, in 2011, when they asked that they should transfer the assets from Mervia directly to Usov. But do you disagree that the assets, just to follow up on Judge LaValle's question, that the assets were owned first by Pinnacle, then they went to Mervia, and then to Usov personally? Isn't that the succession of ownership of the diamonds? Actually, it was a step before, Your Honor. Well, I mean... The first was Harris, then it went to Pinnacle. That was 2006. That's a long way before. Yes. Okay, so it was Harris, Pinnacle, then Mervia. At no point in that hierarchy was Usov ever involved. In fact... He owned the stock of those two companies, didn't he? No. There's been no proof of that either. In fact, in the record, there was a copy that the stock was beneficial, was owned by Harris. In the beginning, Harris was the owner of Pinnacle. In fact, if I may, in the record, there's mention... The district court concluded that Usov was, though, right? I'm sorry? The district court concluded that Usov was the sole owner of Pinnacle. Yes, but I'm saying the record, the evidence in the record. There's only two bases for that, because Lazar had no knowledge. The basis was that Usov said so, but the documentary evidence in the record disputes that. What is... And in fact, if I may just... What is the document you're talking about? Do it. Do it. If I can just... Yeah. The exhibits JK and 00, which are the A352, 353, 354, 355, 361, 376, and also 397. These are the documents that showed that Elena was the owner, even during Harris's lifetime. It also shows that she was a sole beneficiary, which was explained, told to her by Doris. It was only in 2011, I guess, when they decided to manufacture jurisdiction, that Usov came into the picture. And Lazar had no basis for knowledge either way, because he never dealt with them. He dealt with either Harris, Elena, or Doris. And like I said, Doris was supposed to be deposed, but they decided, I guess, when the issue of jurisdiction became relevant, that he wasn't going to be deposed, and he obviously didn't come to testify. And so therefore, we believe that Judge Sweet's statement, both statements, that even though she was interested, but as Harris's widow, she had some status. And also that Usov acted, he says, at 385 and 386, he says that Usov acted on our behalf. And the testimony was that the whole reason Usov came into this picture was because of Harris's estate. Usov testified to that, Elena testified to that, and Doris stated it in these documents. So it's clear that she was the real party. What was the mistake? I'm sorry? You said because of Harris's, someone's mistake. What mistake? Estate. Estate, estate. Oh, oh, okay. Oh, estate. Estate. Harris had other children, and they wanted to, in fact, one of the documents that I cited to you was where Doris said, don't talk to his children, because he transferred it to her during his lifetime, and also she's a sole beneficiary of the Harris estate. What difference does it make? You say the only reason that he came into the picture was because of Harris's estate. Right. So what? If he came into the picture because of Harris's estate, he came into the picture. He became the owner. Yes. He became the owner. He became, that's what they said. I'm not telling you what Usov said or what Elena said, but the point was the beneficiary of his legal ownership was Elena. That doesn't destroy diversity. If Elena's going to be the benefit, going to eventually benefit from Usov's, when Usov died, because it's her father. I believe the Oscar Agouris case says that it would be. This all happened though before the lawsuit. We're going back to 2006. That's when the transfer was to Pinnacle. Well, if I may, one more to respond to that. There was a commodities futures securities investigation in this case, and that's mentioned in the record. During that investigation, the CFTC examined Harris, they examined Elena, they examined somebody York, they examined Pinnacle, and they examined Lazar Inc. because they found Lazar's name in the Pinnacle transactions. Nowhere in CFTC's examination and case was Usov's name ever there because he didn't own it then. He had no connection to it. Thank you, Mr. Neiman. I know you've got a few minutes for rebuttal. Why don't we hear from Mr. Roth? Good morning, your honors. Thank you. I think your honors hit the nail right on the head. The bottom line is that there's evidence, uncontroverted evidence, that Pinnacle owned the diamonds. Usov was 100% owner of Pinnacle. Pinnacle transferred to Mervia. That is, Usov effectuated the transfer from Pinnacle to Mervia, which was acknowledged   to Mervia. Usov was 100% owner of Pinnacle. Pinnacle transferred to Mervia. That is, he said he didn't really want to pay the expenses, transfer the diamonds from Mervia to him. There's no evidence at all. I just explained this letter of 2010 from Dawes, who's the director of Mervia, in which she says, I met with his widow. This is Alaina. It would reconfirm she has been the sole beneficial owner of the company since 2008. There is that errant email. I don't know. Dawes was never deposed by either side. Dawes didn't testify. Was that offered at trial? He was not. Was the email introduced at trial? Email was introduced at trial. I'm not sending a hearsay objection. It was introduced at trial, non-jury trial with Judge Sweet. But the bottom line is that I don't know why Dawes said that. We don't know if Dawes said it. It was hearsay. It was in evidence. But the bottom line is that Usov took the stand, came from Russia, and testified that at all times he owned Pinnacle, and the documents and evidence showed that he owned Pinnacle. He then owned Mervia, and he owned it personally. So the statement that Elena was an interested person because she's the daughter of the plaintiff does not rise to the level of defeating diversity of jurisdiction. Isn't it acknowledged that she was not only an interested person because she was the daughter of the plaintiff, but that Usov owned the diamonds for her benefit? Isn't that correct? Well, no. Usov owned... There's nothing in there that Usov was going to give them to her upon his death. But I mean, she's his only heir. So obviously, she was interested to do... And if you... I mean, the quote from the court is, which Your Honor said... Her husband... I mean, it seems to me the likely inference is that her husband is leaving his property to his wife rather than to his wife's father. Well, what happened was her husband, for reasons which... I'm not sure if they were tax or estate planning, put the diamonds in an entity by the name of Pinnacle, which Usov owned. And so would they eventually go to his... Because he did pass. Would they eventually go to his wife, Usov's daughter? Absolutely. But the evidence is pretty... It's very concrete. The diamonds were put in Pinnacle. Eventually, I would agree for the benefit of Elena Harris. But just because someone would take in an estate does not mean that they're the proper plaintiff for jurisdictional purposes. And that's where the logic fails. Yes, she was interested. And I'm not going to read the quote, but Judge Sweet, who we know has been on the bench for a very long time, at his young age of 94 when he tried this, was very clear. And in his decision, he said that Pinnacle owned it, Murvia owned it, and then Usov owned it. And there was a motion, by the way, not only was there a decision, an order, an opinion, but then there was a judgment, and then there was a motion of reconsideration by counsel, by appellant. And each time, the judge said the same thing. So this is really the fourth bite, if you will, at the apple. He never really specifically ruled, did he? I couldn't find that. I know that it was written. Well, it wasn't, I mean, the problem was this wasn't, well, he didn't rule on that issue. He ruled that Usov had essentially proper standing. The jurisdictional issue didn't come up until after the trial, when there was this errant statement that the daughter is interested. And all of a sudden, there's this argument, which was raised on the reconsideration motion, that there was no jurisdiction. The bottom line is that if this court determines that a beneficiary of an estate is the proper plaintiff, then all bets are off. because it's- That's not my question. My question, why didn't he rule specifically that there is diversity jurisdiction here, that Usov is the master of the case? It was never raised. It was- It was raised. He said in his findings, and that was the basis of it, on page two of his findings of fact, actually the first sentence of his findings of fact, that having considered the testimonial evidence in conjunction with the admitted exhibits, it's found that although Elena, as Harris' widow, is an interested party, she was a straightforward, logical, and credible witness. So it was in that context that he made the statement. Yeah, he did, and he goes on. He says her testimony was confirmed by the adduced documentary evidence of the subsequent events. By contrast, Lazar was not a credible witness with respect to the understanding reached with Harris concerning the diamonds at issue. So he didn't necessarily rule directly to your point on whether or not there was diversity jurisdiction. But his statement was just that I have two people, there were really three people to testify to the trial. Usov, who's in Russia, who really doesn't know, didn't have the interaction. His daughter was here, and Lazar. So he basically said, on a credibility basis, notwithstanding the fact that Elena is the daughter of the plaintiff, ergo interested, I believe her to be much more credible. That's all he said there. As far as the other issues go, your honor, counsel didn't spend time on it. I'm going to spend a minute or less on it. The bottom line is that in order to overturn the factual findings by the lower court, there must be a clearly erroneous standard. And there's a plethora of reasons why the court below determined that the 2012 inventory evaluations, one by appellant, one by appellee, were more proper than the 2008 evaluations, which appellant believes the court wrongfully ruled in favor of. There's several references to it in tape recorded conversations. There are several references to those valuations being market value. There is a plethora of evidence. And to overturn all that with a clearly erroneous standard on a factual issue, your honor, we think is just too high of a burden that appellant can't reach. And the inventory, I will leave with the pages of the inventories. A263 is the inventory prepared by Elena Harris, said she discussed it at the 2012 meeting, and she discussed market valuation. And then as well as A203, which was prepared by Lazar, presented to Harris, and never disputed, which also talked about the valuation of the diamonds. Your honor, for those reasons, we ask that the court affirm the lower court decision. Thank you. Did, was this, was the diversity jurisdiction question raised in the district court subsequent to the district court's opinion? I think- Or was it never raised at all in the district? It was only raised after, I apologize, I think I may have misspoke. It was only raised after the interested word showed up in the decision. Council came up with the interested equals interested party equals lack of diversity. That's when it came up. But never in the court below, your honor. We didn't raise it there. I would just like to- Do we have in the, do we have in the appendix what you put in to raise it in the district court after the opinion? Is that in the appendix? Yes, it's cited, we, we, we, we- Where is that? We, we raised it at the beginning of the trial. We raised it, it's a trial, well, it's in the trial transcript page seven, document number 167 on the district court docket. The trial transcript page 274 to 275 at the end of plaintiff's case. And document number 188 on the district court. So in other words, we, we, we raised it three times at the beginning of the trial. Lack of diversity. Yes. We raised lack of diversity. Correct. And, and we, we raised it at the end of plaintiff's case. In a motion to, to dismiss the case. And we raised it in argument at the end of the case. Where we have another motion. But in your, in your brief you say page eight. In this appeal MLI is not challenging the factual findings regarding jurisdiction. Yes, because we believe as that the judge said. The judge never addressed jurisdiction. We're, we're talking about the two points, the two places where Judge Sweet referred. But, but he certainly made factual findings that Yusuf was the owner of, of the diamonds, or at least the two predecessor companies were through this whole time. So how, how is that consistent with no diversity? Because if the owner, first of all, if the owner of Pinnacle was, that's, that there's no proof, although we requested that Yusuf had documentary proof. That he owned Pinnacle, or that he owned Murry. It was never delivered, because obviously it doesn't exist. He had his deposition, right? No, he didn't. We wanted to have his deposition. They were going to propound him to his deposition to use it at trial. And then we, I guess they decided that may be a mistake, and they, and they. But he testified at trial. He didn't. Yusuf. Oh, I'm sorry. Yusuf did. I thought you meant Duas. I, I apologize. I meant Duas. Yes. So what was the question about Duas? Duas. My question was, you say you raised it. Maybe it wasn't specifically addressed by the district court. But the district court did make findings as to who owned the diamond collections. At certain periods of time. And it was always, always Yusuf either owned the stock in the two companies. Or he personally at the end. And you don't challenge any factual findings that the district court made. The district, the, the, the basic, we, we did, we do challenge. We challenge based on documents that I read that say that she was. In your brief, in this appeal, MLI is not challenging the factual findings regarding jurisdiction. Only the legal conclusion that subject matter jurisdiction exists. That's your statement, right? Yes, because based on the evidence submitted by Duas, who was the one who managed the company and controlled everything until Yusuf came in in August of 2011. He said that the owner of Pinnacle, of the Pinnacle and the Diamonds was Elena. That was discussed, your adversary referred to that particular document. Yes, it was. His deposition wasn't taken. And the judge took it at a bench trial for what it was worth. Normal practice of district judges. And then he also had Yusuf's testimony and he reached a conclusion. He reached a conclusion that Yusuf owned the companies. Yeah, but Yusuf said that he owned it as for estate purposes only. And he owned it for the estate, to help the estate of Harris. Good enough. If he owned it for estate purposes. But the beneficiary. Intention that it be for the benefit of his daughter. That's enough. Yeah, but under the Oscar Gruss case, if he's a real, if she was a real person, that defeats the diversity of jurisdiction. Okay. And if they're just. I'll take another minute, Mr. Diamond, to wrap up. Yeah. Another minute? Yeah. Go ahead. Not even. The, the counsel said that, that, well, as I said, Judge Sweet never ruled, we touch on this, never ruled on jurisdiction in this case. We raised it before him three times, he never ruled on it. And we didn't raise the jurisdiction in our re-argument requested to Judge Sweet. The counsel thought we may did, that, that's not so. Now on the inventory issue, the only point we're making is that Judge Sweet relied on the tapes which were surreptitiously made. The point is, there was only one inventory testified to by Yusuf and, and Elena didn't deny that. And no place on the recordings is a reference to them, to the parties, the people, referring to a document. She said that these documents with these later inventories were discussed at those recordings. Well, the very recordings undercut that claim. There's nothing in the recordings that says they ever discussed the document. And therefore, we urge. They were discussing something. No, they did discuss. But we, we. We were discussing their understanding. Yes. They traded numbers back and forth and discussed. They seemed to be in agreement. Yes, there was one number which Judge Sweet erroneously referred to. And that's, and counsel acknowledged that in, and we cited to it in his post-trial submission. Judge Sweet, there was, there was discussion that there was a $3.5 million claim to be paid. That was for the diamonds already sold. We, we discussed that in our briefs. Judge Sweet thought that that was discussion about how much was owed for the remaining diamonds. And counsel in his paper said that was, that Judge Sweet misspoke. So our argument is the only inventory is the inventory they claimed at trial was the inventory, Yusof did. And that the post-trial argument about using those documents, which are not referred to in the, in the, in the recordings, is, is without basis. And on that basis, we believe that the judgment, if the court finds there is jurisdiction, should be modified to, to follow her own testimony about what she thought the diamonds were worth on her recording. And how much she would accept for cash. So, thank you very much. Thank you both. We'll reserve decision and turn to our